# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

RODNEY GRESHAM,

      PLAINTIFF,

v.                              CASE NO.: CV-10-J-2897-S

CITY OF ADAMSVILLE, ALABAMA,

      DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment and evidence in support of said motion (docs. 18-21), the plaintiff's response and evidence in opposition (doc. 28), and the defendant's reply (doc. 29). Having considered the pleadings and evidence, the court finds as follows:

### I. Factual Background

Plaintiff sued his past employer for violations of Title VII, 42 U.S.C. §§ 2000e *et seq*., and 42 U.S.C. § 1981, for race discrimination and retaliation.[1]  Complaint, ¶ 1. The facts relevant to this case start in April of 2008, when plaintiff learned the defendant was hiring CDL drivers and filled out an application. Plaintiff depo. at 49, 70; defendant exhibit 4. He was hired as a sanitation driver, effective May 27, 2008. Plaintiff depo. at 81; plaintiff exhibit 3. The plaintiff did not understand that he was

---

[1]The plaintiff's claim under §1981 was dismissed by prior order of this court. *See* Court Order of November 30, 2010 (doc. 8).

on probation when he was hired, but no one told him he was promised that job forever. Plaintiff depo. at 82, 84. The plaintiff had no problems at work until John Cameron became his supervisor in October or November 2008. *Id*. at 88-92.

The plaintiff asserts he was discriminated against based on his race by Cameron. Plaintiff depo. at 93. According to the plaintiff, Cameron would make the black employees wash the garbage trucks, which plaintiff never had to do before Cameron became supervisor. *Id*. at 93-95. Before then, the only thing plaintiff did was drive the garbage truck. *Id*. at 99-100. After Cameron became supervisor, black and white employees continued to drive the trucks. *Id*. at 101. However, plaintiff complained to Cameron about the job assignments because only black employees had to clean ditches, wash trucks in the cold, and ride on the back of the garbage trucks. *Id*. at 99, 102-105, 111, 114. He also asserts that he was hired to drive the trucks, and not to do other assignments such as working on the back of a garbage truck. *Id*. at 105-108. However, the plaintiff only rode on the back of the garbage truck two times, and for at least one of these occasions, he volunteered.[2] Plaintiff depo. at 98,

---

[2]The plaintiff's own notes actually support a finding that the plaintiff rode on the back of the garbage truck both times prior to Mr. Cameron becoming supervisor. Plaintiff's October 9, 2008, note reflects that date was the second time in two months he had ridden instead of driving the truck. *See* defendant exhibit 5. By plaintiff's testimony, Mr. Cameron became supervisor after the election in October 2008. By affidavit, Mr. Cameron states he became Supervisor of the Public Works department in November 2008. Affidavit of John Cameron, submitted as defendant exhibit 9.

117.  He admits they did not clean out many ditches, estimating he did this three times.  *Id*. at 121.

The plaintiff agrees Cameron was entitled to assign him other jobs, but asserts that Cameron would assign certain jobs to white people and other jobs to black people.  Plaintiff depo. at 109-110.  The plaintiff testified he did not have any problem with the work assignments, and when he went to Cameron about it, Cameron denied making assignments based on race.  *Id*. at 115-116.  The plaintiff complained to Mr. Cameron about job assignments two times.  *Id*. at 126.

The plaintiff was terminated on April 2, 2009.  Plaintiff depo. at 126.  The sole reason for his termination was that "Employee Services No longer Needed."  Plaintiff exhibit 4.  The only person hired in the public works department after the plaintiff was terminated before him.  *Id*. at 126-127.  He had last complained about job assignments about a month or two before his termination.  *Id*.  When he was terminated, he was told he was not needed, which the plaintiff asserts is false because the job still exists.  Plaintiff depo. at 148.  However, he has no evidence that anyone has been hired to fill the position since his termination.[3]  *Id*. at 149.  After he was

---

[3]The plaintiff both states that the job was not filled, and that it was filled.  Plaintiff depo. at 148-149.  He admits he does not have any evidence that someone was hired, but saw a white employee named Jim Brown driving the garbage truck plaintiff drove.  *Id*. at 149-150. However, he also testified that Brown was from "the fire works.  And that came from the employees there." *Id*.  The plaintiff's testimony is unclear concerning whether Brown was already an employee in another department or not.  *Id*. at 150-151.

terminated, the plaintiff went to the mayor, but she told him she was going to back up her department head.  Plaintiff depo. at 153.

In response to Interrogatories, the defendant has stated the plaintiff's termination stemmed from budgetary concerns, and that as the most recent hire in the Department, the plaintiff was selected for termination.   Plaintiff exhibit 5, interrogatory 3.  By affidavit, Mr. Cameron states that plaintiff was the last person hired by the Public Works department when he was directed to reduce the number of employees in his department.  Affidavit of John Cameron (submitted as defendant exhibit 9), ¶ 5.  Plaintiff's position has not been filled and those job duties are performed by other employees in the department.[4]  *Id.*, ¶¶ 6, 8.  Mr. Cameron also asserts that the plaintiff never complained to him about assignments being unfair or based on race, and the decision to terminate plaintiff had nothing to do with his race. *Id.* ¶ 7.

Based on the above set of facts, the plaintiff brings suit for discrimination based on race and for retaliation.

---

[4]The defendant city uses inmates from the City jail to perform work in the Public Works department.  In exchange for free labor, the inmates receive credit for time served.  Cameron affidavit, exhibit A; affidavit of Susan Gilmore (submitted as defendant exhibit 10), ¶11.  For budgetary reasons, other positions were also eliminated.  Gilmore affidavit, ¶¶ 12-15.

## II. Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986). An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts

showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir.2005).

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins*., 232 F.3d 844, 848 (11th Cir.2000).

### III.  Legal Analysis

***Race Discrimination:***

A plaintiff may prevail on an race discrimination claim against and employer through direct evidence or circumstantial evidence. *Dixon v. Hallmark Cos*., 627 F.3d 849, 854–55 (11th Cir.2010). When a plaintiff lacks direct evidence and must prove discrimination circumstantially, the court evaluates the claims using the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973), and *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089 (1981). *See Alvarez v. Royal Atlantic Developers, Inc*., 610 F.3d 1253, 1264 (11th Cir.2010).

Plaintiff asserts that the above facts constitute race discrimination.  As there is no direct evidence of discrimination, the court applies the analysis required for circumstantial evidence. First, the plaintiff must establish a *prima facie* case of discrimination.  *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir. 1997). Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10.  The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.  The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

The plaintiff meets his prima facie burden of proof if he establishes that (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) the employer treated similarly situated employees outside the class more favorably; and (4) he was qualified to do his job. *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir.2008).

To prove an adverse employment action under Title VII, an employee must show "a serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir.2001). The change in employment status must be significant, such as a hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." *Webb–Edwards v. Orange County Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir.2008) (*quoting Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257 (1998)). An involuntary transfer to a different position may be an adverse employment action if it "involves a reduction in pay, prestige, or responsibility." *Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir.2000).

The plaintiff asserts that the adverse employment action at issue was requiring the plaintiff to ride on the back of the garbage truck instead of drive it, and other unsavory assignments, and that such decisions were based on race. However, by the

plaintiff's own testimony, he rode on the back of the truck two times over his entire employment with the defendant.  While perhaps an inconvenience, performing other duties as needed by an employer two times over approximately ten months does not rise to the level of an adverse employment action.  In fact, the note written by the plaintiff in October 2008 reflects that he rode on the back of the truck for the second time in two months.  As John Cameron did not take over as supervisor until at least October 2008, and the plaintiff's unequivocal testimony is he suffered no discrimination prior to Cameron becoming supervisor, the first incident in which the plaintiff rode on the back of the garbage truck has to pre-date Cameron becoming supervisor.

The evidence before the court also reflects that, at the time the plaintiff was both hired and terminated, the Pubic Works Department of the City of Adamsville had a total of ten employees, six of whom were white and four of whom were black. Defendant exhibit 9B.  According to the defendant, the difference in job assignments simply never occurred.  Plaintiff's arguments notwithstanding, each of the other employees of the Public Works Department submitted an affidavit or signed statement asserting that John Cameron treated all employees the same and jobs are assigned in a fair manner without regard to race.  Defendant Exhibit 8.

9

Although counsel for plaintiff claims "the scene Gresham presents harkens back to the early days after the passing of Title VII where this type of segregation was rampant," (plaintiff's brief at 16), no other employee admits to having suffered such segregation, and by plaintiff's own testimony, he drove the garbage truck every shift except for two times.  Two days of riding on the back of the garbage truck over approximately ten months of work does not support a claim of "rampant" discrimination.  Additionally, the plaintiff testified that the defendant City used inmate labor to ride on the back of the garbage trucks.  Plaintiff depo. at 112.

By the plaintiff's own testimony, garbage pick up only occurred Tuesday through Thursday.  On Mondays and Fridays, as members of the Public Works Department, the employees performed other duties. Plaintiff depo. at 108-109. These included picking up sticks and driving a pick up truck.  On three occasions, the plaintiff had to clean ditches, again over a ten month period.  Plaintiff depo. at 121. The plaintiff even states that he had no problem with the work assignments and did them because he was a "team player."  Plaintiff depo. at 109-110, 115.  Given this, the courts finds the plaintiff has failed to establish an adverse employment action based on job assignments.

Although harder to decipher from the plaintiff's brief, the plaintiff seems to assert that his termination was also based on discrimination.  For purposes of this

opinion, assuming that the plaintiff has established a prima facie case of discrimination based on race, the burden shifts to the defendant to offer a legitimate non-discriminatory reason for its actions.  The reason offered by an employer for an action "'does not have to be a reason that the judge or jurors would act on or approve' ... Instead, all that matters is that the employer advance an explanation for its action that is not discriminatory in nature." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir.1999).

The need to reduce the number of employees for budgetary reasons is a legitimate, non-discriminatory reason for defendant's actions, to which the plaintiff wholly failed to offer any evidence in response, to demonstrate pretext.  The plaintiff fails to dispute, let alone rebut, that he was the most recent hire, or that he was not still within his probationary period.[5]  Therefore, the court is of the opinion that the defendant's motion is due to be granted on the plaintiff's claim for discrimination.

### Retaliation

The plaintiff also alleges that he was terminated because of his complaints that Cameron was discriminating against blacks.  To establish retaliation for engaging in protected activity, the court must apply the *McDonnell-Douglas* burden shifting standard.  The plaintiff must prove (1) he participated in a protected activity; (2) he

---

[5]The plaintiff alleges he has no burden to rebut defendant's legitimate, non-discriminatory reason.  The court disagrees, as set out herein.

suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. *Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1277 (11th Cir.2008) *(citing Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 2410-16, 165 L.Ed.2d 345 (2006). *See also Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1363 (11th Cir.2007).

For purposes of this opinion, the court assumes the plaintiff has established he engaged in a protected activity when he complained to Cameron, and that he suffered an adverse employment action when he was terminated. However, the plaintiff has failed to show any causal connection other than temporal proximity in that his last complaint was "[m]aybe a month or two before." Plaintiff depo. at 127. The defendant has asserted the plaintiff was terminated simply because it needed to reduce its budget.

The plaintiff offers no evidence, or even argument, concerning how his conversation with Cameron a month or two before his termination is causally connected to being terminated due to the defendant having budgetary problems.[6] Having sought evidence that the events about which the plaintiff complains are not

---

[6]Nor has the plaintiff produced any evidence at all that the City of Adamsville was not having monetary problems, or that it was not attempting to reduce its number of employees for this reason.

12

"wholly unrelated," the court can find none. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir.2001); *Clover v. Total System Services, Inc.,* 176 F.3d 1346, 1354 (11th Cir.1999) (quoting *Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.1985)).

Even if the court could find temporal proximity sufficient for the plaintiff to meet his prima facie case, the defendant offered a legitimate, non-discriminatory reason for its actions, which the plaintiff had failed to rebut.  "A reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Brooks v. Cnty. Com'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir.2006) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).  An employee may do that "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir.2005).

Provided that the proffered reason is one that might motivate a reasonable employer, the plaintiff must meet that reason head on and rebut it. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir.2000).  The plaintiff must offer evidence from which a jury may conclude that the proffered reason is "a pretextual ruse for retaliation." *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th

Cir.1999).  He must point to "concrete evidence in the form of specific facts .... Mere conclusory allegations and assertions will not suffice."  *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990).

The plaintiff fails to meet this burden.  His only response to the defendant's reason is conjecture and argument.  The plaintiff asserts

> First the close temporal proximity of 1-2 months between Plaintiff's last complaint and his termination is sufficient to show that the reason given for the termination is sufficient to show that the reason given for the termination is pretextual.  Second, the  fact that Plaintiff, who had previously voiced the discrimination complaints of others in his department, was recently elected to the position of spokesperson the Council  (sic) on behalf of his department must have been threatening to Cameron since [plaintiff] would have had the ear of the City Council and would have been in a better position to bring the discrimination issues to light.  Terminating Gresham solved that problem.

Plaintiff's brief at 23.[7]

Nothing in this argument provides any evidence.  By the plaintiff's own testimony, each time he complained to Cameron about job assignments, Cameron responded "its not like that." Plaintiff depo. at 127.  According to plaintiff, that was all Cameron said, and that they "conversated, but that was about it."  Plaintiff depo. at 128.

---

[7]This argument is refuted by affidavits of the other Public Works employees who each state job assignments were not based on race. *See* defendant exhibit 8.  The plaintiff offers nothing to rebut this evidence.

14

Therefore, the court must grant summary judgment on plaintiff's claims of retaliation as well.

## CONCLUSION

Having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court shall order that the defendant's motion for summary judgment on all counts of the plaintiff's complaint is due to be granted and the plaintiff's claims shall be dismissed with prejudice.

**DONE** and **ORDERED** this the 26th day of July, 2011.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

15